**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR DISCOVERY IN AID OF FOREIGN PROCEEDINGS** | **Misc. Action No.** _____ |

**APPLICANT PIRAEUS BANK SA'S *EX PARTE*
APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO TAKE DISCOVERY IN AID OF A FOREIGN PROCEEDING**

Applicant Piraeus Bank SA ("**Piraeus**"), by and through its counsel, Reed Smith LLP, hereby applies *ex parte* for an Order pursuant to 28 U.S.C. § 1782 granting Piraeus leave to serve subpoenas *duces tecum* ("**Subpoenas**") on Respondents The NASDAQ Stock Market LLC ("**NASDAQ**") and OTC Markets Group ("**OTC**" and together with NASDAQ, "**Respondents**") for discovery to be used in a future judicial legal proceeding in England, and states as follows:

## NATURE OF THE APPLICATION

1.      This is a limited-purpose action brought pursuant to 28 U.S.C. § 1782 to obtain evidence from the Respondents for use in an anticipated foreign judicial proceeding that will be commenced by Piraeus against Newlead Holdings, Ltd. ("**Newlead**") before the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (the "**English Court**") pursuant to a Guarantee and Indemnity agreement, dated December 10, 2010 (the "**Guarantee**").[1]

2.      Piraeus intends to assert breach of contract claims against Newlead before the English Court (the "**Anticipated Proceeding**"), the forum designated in the Guarantee as having "exclusive jurisdiction" to settle any disputes arising out of the Guarantee.

3.      Title 28 U.S.C. § 1782(a) authorizes district courts to order parties found within their district, such as the Respondents, to provide evidence in support of foreign proceedings.

4.      Respondents reside, or are found, in New York City, New York and possess evidence about Newlead's breaches of financial undertakings in the Guarantee.

---

[1]   This Court has already granted a related Section 1782 proceeding brought by Piraeus in connection with ongoing legal proceedings against Grand Anemi Limited, Grandunion Inc., and Michail (Michael) Zolotas in the Queen's Bench Division of the English High Court of Justice.  See In re Piraeus Bank, 20-mc-00210 (S.D.N.Y).

5.      Piraeus needs the Respondents to provide that evidence so that Piraeus can prove Events of Default under the relevant loan documents and glean the full scope and nature of Newlead's breaches of the Guarantee.

6.      Proving those facts with the evidence that the Respondents possess will provide Piraeus with necessary details regarding the extent of Newlead's breaches, and will facilitate the prompt and economical resolution of the Anticipated Proceeding, thereby furthering one of Section 1782's primary purposes.

7.      Moreover, Piraeus cannot compel the Respondents to appear or provide evidence in the Anticipated Proceeding.

8.      Granting this Application will therefore help the English Court obtain information and resolve the Anticipated Proceeding expeditiously and economically.

9.      In short, granting the Application will serve the exact purpose for which Section 1782 was enacted — namely, providing judicial assistance to parties seeking evidence from the United States that will be used to help economically resolve foreign legal proceedings.

10.     As is discussed in greater detail in Piraeus' accompanying Memorandum of Law, the Application:

(a)     Meets the three statutory requirements for granting a Section 1782 application; and

(b)     Satisfies the four discretionary factors annunciated by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) for granting a Section 1782 application.

11.     Consequently, the Application satisfies Section 1782's legal and factual requirements and serves the precise purpose for which Section 1782 was enacted.

12.     Piraeus is therefore entitled to an Order allowing it to serve the Subpoenas on the Respondents, proposed copies of which are attached hereto as **Exhibits A and B**.

13.     A proposed Order granting that relief is attached hereto as **Exhibit C**.

## THE PARTIES

14.     Piraeus is, and was at all relevant times, a banking institution duly incorporated and existing under the laws of Greece, with its registered office at 4 Amerikis Street, 10564, Athens, Greece.  Piraeus is the claimant in the Anticipated Proceeding.

15.     Respondent NASDAQ is a corporate entity that is found in the Southern District of New York within the meaning of Section 1782.

16.     Respondent OTC is also found in the Southern District of New York within the meaning of Section 1782.

17.     Respondents will not be parties to the Anticipated Proceeding and cannot be compelled to appear or provide evidence in it.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this dispute pursuant Title 28 U.S.C. § 1782 and Title 28 U.S.C. § 1331, because this limited-purpose action arises under the laws of the United States. *United Co. Rusal, PLC v. Trafigura A.G.*, No. 3:11mc17 (SRU), 2011 U.S. Dist. LEXIS 26897, at *17 (D. Conn. March 16, 2011) (stating that "the court has subject matter jurisdiction arising under 1782 and through the operation of section 1331").

19.     This Court is the proper venue for this limited-purpose action because the Respondents are found in this district within the meaning of Section 1782.  *See* 28 U.S.C. § 1782 (stating that "[t]he district court in which a person is . . . found" may order that person to provide discovery).

20.     Respondent NASDAQ is headquartered at 4 Times Square, New York, N.Y. 10036

and regularly transacts business here.

21.     Respondent OTC is headquartered at 300 Vesey Street, 12th Floor, North End

Avenue, New York, N.Y. 10282 and regularly transacts business here.

## FACTUAL BACKGROUND

22.     The following Sections discuss the underlying facts giving rise to the Anticipated

Proceeding and this Application.

23.     These facts are intended to demonstrate why the Application should be granted, as

the merits of the claims and defenses in the Anticipated Proceeding will ultimately be decided by

the English Court.

### A.     Newlead Executes the Newlead Guarantee

24.     On or around December 10, 2010, Marfin Popular Bank Public Co. Ltd. ("**Marfin**

**Popular**," or "**Lender**") and Marfin Egnatia Bank Societe Anonyme ("**Marfin Egnatia**")—two

predecessor entities of Piraeus'—entered into a $62 million Revolving Credit Facility (the

"**Revolving Credit Facility**") with certain shipping entities affiliated with Newlead, namely

Grand Venetico Inc., Grand Markela Inc., Newlead Shipping S.A., Newlead Bulkers S.A., Grand

Rodosi Inc., Brazil Holdings, Ltd., Australia Holdings Ltd., and China Holdings Ltd.   (the

"**Borrowers**"). Manolatou Decl. ¶ 5 & Ex. 1 at §§ 4(A).

25.     Newlead guaranteed that the Borrowers would perform their obligations under the

Revolving Credit Facility pursuant to a Guarantee and Indemnity agreement, dated December 10,

2010 (the "**Guarantee**"). Hewetson Decl. ¶ 4.

26.     As part of the Newlead Guarantee, Newlead agreed to various undertakings,

including, as relevant here, that Newlead would:

(a)      guarantee the Borrowers' due and punctual re-payment of any loan amounts withdrawn against the Revolving Credit Facility; and

(b)      comply, and ensure and procure that each of the Borrowers would comply, with all covenants and undertakings set out in the Revolving Credit Facility;

27.      Newlead further undertook that it would:

(a)      maintain a valid corporate existence in Bermuda;

(b)      pay all taxes and governmental charges it incurred;

(c)      provide, for itself and the Borrowers, annual audited financial statements and quarterly unaudited financial statements to Piraeus (as well as other financial information);

(d)      maintain certain working capital amounts and equity ratios; and

(e)      "comply with all relevant legislation and laws and regulations (including but not limited to the laws and regulations relating to the listing of the shares of [Newlead] on NASDAQ)."  Hewetson Decl. ¶ 6.

**B.      Piraeus Acquires The Rights To The Revolving Credit Facility And Newlead Guarantee And Calls On The Guarantee**

28.      In or around March 2011, Marfin Egnatia was acquired by Marfin Popular. Manolatou ¶ 5.

29.      On or around April 5, 2012, Marfin Popular changed its name to Cyprus Popular Bank Public Co. Ltd. ("**Cyprus Popular**").  *Id.*

30.      In or around early 2013, specific assets of Cyprus Popular relating to its Greek business were sold to Piraeus, including the rights under the Revolving Credit Facility and the Guarantee, pursuant to (i) a Sale and Transfer Agreement dated March 26, 2013 between Cyprus Popular and Piraeus; (ii) Decree No. 97/26-3-2013 of the Central Bank of Cyprus; and (iii) Decision No. 66/26-3-2013 of the Bank of Greece.  *Id.*

31.     As a result of the sale, on March 26, 2013, Piraeus succeeded to all of the rights and obligations of Marfin Egnatia and Cyprus Popular with respect to the Revolving Credit Facility and the Guarantee. *Id.*

32.     At some point after March 2012, the Borrowers stopped paying amounts due under the Revolving Credit Facility.

33.     By letter dated February 27, 2015 (the "**February 27th Letter**"), Piraeus notified the Borrowers and Newlead that (i) they were in breach of the Revolving Credit Facility and Guarantee due to their failures to pay overdue accrued interest in the aggregate sum of $1,257,328.68, default interest in the sum of $3,255,263.68, and management fees in the aggregate sum of $921,275.55; (ii) such breaches constituted an Event of Default under the Revolving Credit Facility; and (iii) the Revolving Credit Facility was therefore terminated and the indebtedness in the total sum of $38,034,480.53 was immediately due and payable.  Hewetson Decl. ¶ 5.

34.     Despite such demand, Newlead has failed to satisfy the debt it owes to Piraeus, which remains outstanding.

35.     In addition to breaching its repayment obligations, Newlead has breached other undertakings provide for in the Guarantee, causing additional Events of Default under the loan documents.  For example:

(a)     Newlead failed to pay annual registration fees necessary to maintain a valid corporate existence in Bermuda; and

(b)     Newlead failed to "comply with all relevant legislation and laws and regulations (including but not limited to the laws and regulations relating to the listing of the shares of [Newlead] on NASDAQ)." *Id*. ¶ 6.

36.     Taking into account the interest which has accrued since the February 27 Letter, Piraeus is now entitled to more than $49 million and default interest continues to accrue. Manolatou Decl. ¶ 9.

## TITLE 28 U.S.C. § 1782

37.     Title 28 U.S.C. § 1782 authorizes district courts to order parties found within their district to provide documentary and testimonial evidence in aid of foreign proceedings.

38.     In relevant part, 28 U.S.C. § 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." *Id.*

39.     Title 28 U.S.C. § 1782 sets forth three statutory requirements for granting an application seeking discovery in aid of foreign proceedings.

(a)     First, the person from whom discovery is sought must reside or be found in the district of the court to which the application is made.

(b)     Second, the discovery must be for use in a foreign proceeding.

(c)     Third, the application must be made by an "interested person."

*See* 28 U.S.C. § 1782(a).

40.     As set forth in greater detail in Piraeus' accompanying Memorandum of Law, this Application satisfies 28 U.S.C. § 1782's three statutory requirements because:

(a)     The Respondents are found within this District because they are headquartered here and at a minimum, maintain substantial business operations here;

(b)     The evidence that the Application and Subpoenas seek will be used to support the Anticipated Proceeding, which is a foreign court proceeding; and

(c)      Piraeus, as the plaintiff in the Anticipated Proceeding, is a person interested in those proceedings as a matter of law.

41.      As is further discussed in Piraeus' accompanying Memorandum of Law, the Application also satisfies the four discretionary factors set forth by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

42.      Lastly, as Piraeus' accompanying Memorandum of Law describes, courts routinely grant Section 1782 applications *ex parte*, because the recipient of a subpoena issued pursuant to Section 1782 has the right to move to quash if it believes the Section 1782 application was improperly granted.

43.      Consequently, the Application meets the legal and factual requirements for ordering discovery pursuant to 28 U.S.C. § 1782 and should be granted *ex parte*.

## THE SUBPOENAS

44.      The Subpoenas, sample drafts of which are attached hereto as **Exhibits A and B**, are narrowly tailored to obtain non-privileged documentary evidence from the Respondents that will support Piraeus' contention that Newlead breached the terms of the Guarantee—and owes Piraeus more than $49 million in loan proceeds—after committing multiple Events of Default under the relevant loan documents .

45.      Notably, the Subpoenas do so in a fashion that is neither burdensome nor unreasonable.

46.      For instance, instead of specifically seeking "any and all" documents, they seek documents sufficient to identify, and expressly excludes privileged documents from their scope to avoid unnecessary objections from the Respondents.

47.     Specifically, the Subpoenas seek simple and non-objectionable documentary evidence from the Respondents regarding Newlead's listing on public trading exchanges maintained by the Respondents and Newlead's subsequent de-listing from such markets in violation of the Guarantee.

48.     Those matters should be simple for the Respondents to address given that they operate financial markets and the information sought by the Subpoenas concerns Newlead's eligibility to have been listed on those markets.

49.     Lastly, given Newlead's non-operational status and historical refusal to provide Piraeus with information required under the Guarantee, absent an Order from this Court, this information will never be disclosed because the Respondents cannot be compelled in the Anticipated Proceeding to provide it, and Newlead simply will not produce it.

50.     Piraeus' Application should therefore be granted so that Piraeus can serve the Subpoenas and obtain the basic information to which it is entitled.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Piraeus prays for:

(a)     An Order pursuant to 28 U.S.C. § 1782 in the form attached hereto as
        Exhibit C, granting Piraeus leave to serve the Subpoenas upon
        Respondents; and

(b)     Such other and different relief as the Court deems just and proper.

Respectfully Submitted,

DATED this 23rd day of September, 2020

/s/ Samuel Kadosh_____
Samuel Kadosh
Blake Simon
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel.:  (212) 521-5400
Fax:  (212) 521-5450
*Attorneys for Applicant, Piraeus Bank*

- 11 -