**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR DISCOVERY IN AID OF FOREIGN PROCEEDINGS**

**Misc. Action No. ________________**

**APPLICANT PIRAEUS BANK SA'S MEMORANDUM OF LAW**
**IN SUPPORT OF *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782**

**Reed Smith LLP**
599 Lexington Avenue
New York, New York 10022
P: (212) 521-5400

*Attorneys for Applicant Piraeus Bank SA*

# TABLE OF CONTENTS


**Page**

I. THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS .......... 6

A. Section 1782 and Discovery In Aid of Foreign Proceedings .......... 6

B. Section 1782's Three Statutory Requirements .......... 7

C. The Application Meets Section 1782's Three Statutory Requirements .......... 7

II. THE APPLICATION SATISFIES THE FOUR DISCRETIONARY INTEL FACTORS .......... 10

A. The Respondents Will Not Be Parties to the Anticipated Proceedings .......... 11

B. The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought .......... 12

C. The Application Does Not Seek to Circumvent Proof-Gathering Restrictions in the English Court .......... 12

D. The Subpoenas Are Not Unduly Intrusive or Burdensome .......... 13

III. THE APPLICATION WAS PROPERLY BROUGHT *EX PARTE* .......... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121 (2d Cir. 2017) ........ 2, 6, 7, 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ........ 6, 7, 13

*In re Catalyst Managerial Servs., DMCC*, 680 F. Appx. 37 (2d Cir. 2017) ........ 12

*Certain Funds, Accounts and/or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ........ 7, 8, 10

*In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361 (S.D.N.Y. 2019) ........ 12

*In re Cohen*, No. 16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622 (E.D.N.Y. Dec. 6, 2016) ........ 8

*In re Application of Republic of Ecuador*, No. 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360 (E.D. Cal. Sept. 13, 2011) ........ 13, 14

*In re Gianoli Aldunate*, 3 F.3d 54 (2d Cir. 1993) ........ 6

*Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery v. Bullock*, 652 Fed. Appx. 7 (2d Cir. 2016) ........ 10, 13

*Gushlak v. Gushlak*, 486 F. Appx. 215 (2d Cir. 2012) ........ 14

*In re Hansainvest Hanseatische Investment-GmbH*, No. 18-mc-310 (RJS), 2018 WL 7500304 (S.D.N.Y. Dec. 17, 2018) ........ 9

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ........ 2, 6, 9, 11

*Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ........ 7, 8, 10

*In re Ex Parte Application of IPCom GMBH & Co. KG*,
No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746 (N.D. Cal. April 10, 2014) ....................8

*In re Iraq Telecom Ltd.*
No. 18-MC-458 (LGS) (OTW), 2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019) ....................7

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
62 F. Supp. 3d 358 (S.D.N.Y. 2014)....................8, 12

*Lancaster Factoring Co. v. Mangone*,
90 F.3d 38 (2d Cir. 1996) ....................10

*In re Malev Hungarian Airlines*,
964 F.2d 97 (2d Cir. 1992)....................2

*Marubeni Am. Corp. v. LBA Y.K.*,
335 Fed. Appx. 95 (2d Cir. 2009)....................10

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)....................8, 9, 10, 11

*O'Keefe v. Adelson (In re O'Keeffe)*,
650 Fed. Appx. 83 (2d Cir. 2016)....................14

*In re Ontario Principals' Counsel*,
No. 2:13-mc-120-LKK-KJN, 2013 U.S. Dist. LEXIS 179955 (E.D. Cal. Dec. 23, 2013) ....................8

*In re Application of Strand Invs. Ltd*.,
No. 09- 21985-CIV-MORENO, 2009 U.S. Dist. LEXIS 76445 (S.D. Fl. July 24, 2009) ....................8

*Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*,
722 F. Appx. 7 (2d Cir. 2018)....................7, 9, 14

**Statutes**

28 U.S.C. § 1782....................6, 11, 13

## INTRODUCTION

Applicant Piraeus Bank SA ("**Piraeus**") submits this Memorandum of Law, along with the accompanying declarations of Charles M. Hewetson dated September 16, 2020 ("**Heweston Decl.**"), and Persefoni Manolatou dated September 14, 2020 ("**Manolatou Decl.**"), in support of its *Ex Parte* Application Pursuant to 28 U.S.C. § 1782 ("**Application**") for an Order permitting them to serve subpoenas *duces tecum* ("**Subpoenas**") upon (a) The NASDAQ Stock Market LLC ("**NASDAQ**") and (b) OTC Markets Group ("**OTC**" and together with NASDAQ, "**Respondents**"). The proposed Subpoenas are attached to the accompanying Application as **Exhibits A and B**.

## PRELIMINARY STATEMENT

This is a limited-purpose action brought pursuant to 28 U.S.C. § 1782 to obtain evidence from Respondents that Piraeus needs in support of an anticipated proceeding that Piraeus seeks to bring against one of Piraeus' loan counterparties, Newlead Holdings Ltd. ("**Newlead**"), in connection with the breach of a Guarantee and Indemnity agreement meant to secure repayment of some $62 million in loans made by Piraeus. Piraeus intends to assert breach of contract claims against Newlead before the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court ("**English Court**"), the forum designated in the guarantee as having "exclusive jurisdiction" to settle any disputes arising out of the guarantee (the "**Anticipated Proceeding**"). [1]

After Newlead was administratively dissolved in Bermuda, its place of incorporation, Piraeus has taken the necessary steps to restore this entity to the Bermudan Companies Register

[1] This Court has already granted a related Section 1782 proceeding brought by Piraeus in connection with ongoing legal proceedings against Grand Anemi Limited, Grandunion Inc., and Michail (Michael) Zolotas in the Queen's Bench Division of the English High Court of Justice. *See In re Piraeus Bank,* 20-mc-00210 (S.D.N.Y).

for purposes of bringing the Anticipated Proceedings forthwith. Piraeus does not intend to name either of the Respondents as parties to the Anticipated Proceedings against Newlead, and Piraeus has only brought this limited purpose action against the Respondents because they possess relevant evidence that is needed for the Anticipated Proceedings.

The Respondents are financial markets on which Newlead was previously listed. The Respondents are likely to have evidence that is material to the Anticipated Proceeding because, among other relevant promises, Newlead promised in the Guarantee that it would "comply with all relevant legislation and laws and regulations (including but not limited to the laws and regulations relating to the listing of the shares of [Newlead] on NASDAQ)." Newlead was de-listed from both NASDAQ and two "pink sheet" markets maintained by the OTC. Newlead therefore did not comply with all applicable "laws and regulations" relevant to its listing on public markets. The evidence sought by this Application will assist Piraeus in proving its entitlement to collect on the Guarantee following multiple Events of Default under the relevant loan documents. Moreover, neither of the Respondents can be compelled to appear and produce documents in the Anticipated Proceeding.

This Application therefore falls squarely within Section 1782's stated goal of "provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004), and serves Section 1782's aim of "'providing [an] efficient means of assistance to participants in international litigation in our federal courts . . . .'" *Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121, 134 (2d Cir. 2017) (quoting *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

Consequently, the Application should be granted, and Piraeus should be permitted to issue the Subpoenas to the Respondents.

## BACKGROUND

This Application arises out of non-party Newlead's failure to honor contractual commitments that Newlead owes to Piraeus. Newlead was a vertically integrated shipping enterprise created by Michael Zolotas.[2] Manolatou Decl. ¶ 2. Newlead was listed on NASDAQ from December 21, 2009 to June 25, 2014 and on the OTC, an over-the-counter, off-exchange financial market, from November 25, 2015 to July 29, 2019. On or around December 10, 2010, Marfin Popular Bank Public Co. Ltd. ("**Marfin Popular**") and Marfin Egnatia Bank Societe Anonyme ("**Marfin Egnatia**")—two predecessor entities of Piraeus'—entered into a $62 million Revolving Credit Facility with certain shipping entities with which Newlead was affiliated (the "**Revolving Credit Facility**"), namely, Grand Venetico Inc., Grand Markela Inc., Newlead Shipping S.A., Newlead Bulkers S.A., Grand Rodosi Inc., Brazil Holdings, Ltd., Australia Holdings Ltd., and China Holdings Ltd. (together, the "**Borrowers**").[3] *Id.* ¶ 5 & Ex. 1 at §§ 4(A). Newlead guaranteed that the Borrowers would perform their obligations under the Revolving Credit Facility pursuant to a Guarantee and Indemnity agreement, dated December 10, 2010 (the "**Guarantee**").[4] *Id.* ¶ 10 & Ex. 2.

Under the Guarantee, Newlead promised that it would (a) guarantee the Borrowers' due and punctual re-payment of any loan amounts withdrawn against the Revolving Credit Facility by Borrowers of their obligations under the Loan Agreement and (b) discharge the Borrowers'

[2] Piraeus is separately pursuing breach of contract claims against Mr. Zolotas and certain of his entities before High Court of Justice, Business and Property Courts of England and Wales, Commercial Court in an action Piraeus commenced on February 27, 2019. A true and correct copy of the Claim Form and Particulars of Claim from that action is attached to the Manolatou Declaration as Exhibit 7.

[3] A true and correct copy of the Revolving Credit Facility is attached to the Manolatou Declaration as Exhibit 1.

[4] Piraeus is a successor in interest to the Revolving Credit Facility and Guarantee pursuant to a Sale and Transfer Agreement dated March 26, 2013 between Cyprus Popular Bank Public Co. Ltd. (f/k/a Marfin Popular) and Piraeus, as well as decisions from the Bank of Greece and Bank of Cyprus ratifying the sale and transfer. A true and correct copy of the Guarantee is attached to the Manolatou Declaration as Exhibit 2.

indebtedness, from time to time, upon demand. *Id*. Ex. 2 at § 4.1.1. The Borrowers ultimately withdrew more than $48,970,000 in loan proceeds additional interest and other fees. The Borrowers, however, did not pay such amounts to Piraeus, and neither did Newlead despite its contractual commitment to do so.

Newlead took on other obligations under the Guarantee as well. Specifically, Newlead promised that it would (a) maintain a valid corporate existence in Bermuda, (b) pay all taxes and governmental charges it incurred, (c) provide, for itself and the Borrowers, annual audited financial statements and quarterly unaudited financial statements to Piraeus (as well as other financial information), (d) maintain certain working capital amounts and equity ratios, and (e) "comply with all relevant legislation and laws and regulations (including but not limited to the laws and regulations relating to the listing of the shares of [Newlead] on NASDAQ)." *Id.* Ex. 2 at § 8.2.1-17; Hewetson Decl. ¶ 6. In addition to breaching its primary repayment obligations, Piraeus is aware of additional Events of Default under the loan documents arising from these undertakings.

Most relevant here, on June 25, 2014 NASDAQ delisted Newlead from its exchange pursuant to Listing Rules 5101 and 5450(a)(1) (the "**De-Listing Letter**").[5] Hewetson Decl. ¶ 7. NASDAQ cited specific reasons for de-listing Newlead in the De-Listing Letter, including "public interest concerns raised by [Newlead's] repeated misstatements and omissions of important facts in public disclosures." Manolatou Decl. Ex. 3 at 1. In support of these "public interest concerns" NASDAQ pointed to false and misleading public disclosures made by Newlead, including a fictitious "balance sheet program" by which the company claimed to have restructured certain past-due indebtedness, as well as questionable related party transactions with Mr. Zolotas. *Id.* at 4. NASDAQ also cited the company's continuing failure to keep its share price above $1 per share

[5] A true and correct copy of the De-Listing Letter is attached as Exhibit 3 to the Manolatou Declaration.

and to maintain adequate equity and total revenue levels as reasons for the de-listing. *Id.* at 6. These activities, as well as being de-listed from NASDAQ, constituted breaches of the Guarantee by Newlead.

After NASDAQ de-listed Newlead, Newlead was then listed on a "pink sheet" marketplace operated by OTC, the OTC Pink Open Market – a speculative, over-the-counter exchange with virtually no listing requirements. Despite the fact that these marketplaces have little-to-no disclosure requirements and typically host financially distressed companies, Newlead was de-listed from the OTC Pink on July 29, 2019 after OTC issued a "caveat emptor" warning regarding Newlead on October 5, 2018.[6] Manolatou Decl. ¶ 12 Ex. 12. That de-listing also constituted a breach of the Guarantee.

The full extent of Newlead's breaches of the Guarantee are not known to Piraeus and Newlead itself cannot provide Piraeus with such information due to its non-operational status. Specifically, Newlead failed to pay annual registration fees necessary to maintain a valid corporate existence in Bermuda and was therefore administratively struck off from the Bermudan Registrar of Companies on July 31, 2018.[7] *Id.* ¶ 14. Accordingly, Piraeus does not have any ability to compel information from Newlead about its breaches of the Guarantee because Newlead is not an active company. The Application is therefore designed to obtain limited discovery from the Respondents that will help Piraeus adduce the full extent of Newlead's breaches under the Guarantee and Piraeus' ability to collect on Newlead's outstanding indebtedness by way of the Anticipated

---

[6] True and correct copies of publically available articles confirming the OTC's caveat emptor warning and eventual de-listing of Newlead are attached as Exhibit 4 Manolatou Declaration.

[7] As noted above, Piraeus restored Newlead to the Bermudan Registrar of Companies on March 4, 2019. Pursuant to Section 261(6) of the Companies Act 1981, Newlead is now deemed to have continued in existence for purposes of being held liable to third parties, such as Piraeus. A true and correct copy of Piraeus' application to restore Newlead is attached as Exhibit 5 Manolatou Declaration, and the Supreme Court of Bermuda Commercial Court Civil Jurisdiction's order granting the application is attached as Exhibit 6.

Proceedings. The Respondents are likely in possession of documents that are highly relevant to discovering the full extent of Newlead's breaches of the Guarantee.

## ARGUMENT

Section I below demonstrates that the Application meets Section 1782's three statutory requirements. Section II confirms that the Application also satisfies the four discretionary factors enunciated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc*. Lastly, Section III verifies that courts routinely grant Section 1782 applications *ex parte*.

### I. THE APPLICATION SATISFIES SECTION 1782'S THREE STATUTORY REQUIREMENTS

#### A. Section 1782 and Discovery In Aid of Foreign Proceedings

Title 28 U.S.C. § 1782 authorizes courts to order parties found within their district to provide documentary and testimonial evidence in support of foreign proceedings. *See* 28 U.S.C. § 1782 (2012); *see also Intel Corp.*, 542 U.S. at 247 ("Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals.").

Section 1782(a) specifically provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ." 28 U.S.C. § 1782(a). The right of a court to grant leave to seek discovery from a person found in its district is broad. *See In re Accent Delight Int'l Ltd.*, 869 F.3d at 134 ("The availability of Section 1782 discovery is . . . quite broad and only has broadened through successive amendments over the years."); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (relating that Section 1782 has been given "'increasingly broad applicability'" in recent years) (*quoting In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993)); *Application of Gianoli Aldunate*, 3

F.3d 54, 57 (2d Cir. 1993) ("The primary intent of the amendments [to § 1782] was to 'clarif[y] and liberalize . . . existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States'").

**B. Section 1782's Three Statutory Requirements**

Section 1782 sets forth three statutory requirements parties must satisfy to obtain an order permitting discovery. Those three requirements are: (1) "'the person from whom discovery is sought [must] reside[] (or . . . [be] found)' within the court's district;" (2) "'the discovery . . . [must be] for use in a foreign proceeding before a foreign tribunal;'" and (3) "'the application . . . [must be] made by a[n] . . . interested person.'" *Symeou v. Hornbeam Corp. (In re Hornbeam Corp.)*, 722 F. Appx. 7, 9 (2d Cir. 2018)(quoting *Brandi-Dohrn*, 673 F.3d at 80); *see In re Accent Delight Int'l Ltd*., 869 F.3d at 128 (relating same); *Certain Funds, Accounts and/or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (explaining same).

**C. The Application Meets Section 1782's Three Statutory Requirements**

The Application meets Section 1782's three statutory requirements.

*First*, each of the Respondents from whom discovery is sought is found in New York and, and has its principal place of business in New York, New York. NASDAQ is located at 4 Times Square, New York, N.Y. 10036. OTC's corporate headquarters is located at 300 Vesey Street, 12th Floor, North End Avenue, New York, N.Y. 10282. The Respondents are therefore found here within the meaning of Section 1782 in satisfaction of the first statutory requirement. *See In re Iraq Telecom Ltd.*, No. 18-MC-458 (LGS) (OTW), 2019 WL 3798059, at *3 (S.D.N.Y. Aug. 13, 2019) (granting application for Section 1782 from corporations that "conduct business in this District").

*Second*, the Subpoenas seek discovery that will be used in proceedings before a foreign tribunal because it will be used in support of the Anticipated Proceeding before the English Court,

and could be used before the courts of other jurisdictions as well. United States courts routinely conclude that foreign judicial proceedings satisfy Section 1782's "foreign tribunal" requirement. *See In re Cohen*, No. 16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622, at *11 (E.D.N.Y. Dec. 6, 2016) (finding that the English High Court is a foreign tribunal within the meaning of Section 1782); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 361-62 (S.D.N.Y. 2014) (finding a U.K. proceeding satisfied the foreign tribunal requirement); *see also In re Ex Parte Application of IPCom GMBH & Co. KG*, No. 5:14-mc-80037-EJD-PSG, 2014 U.S. Dist. LEXIS 50746, at *5 (N.D. Cal. April 10, 2014) (holding that German court proceedings qualify as foreign proceedings for Section 1782's purposes); *In re Ontario Principals' Counsel*, No. 2:13-mc-120-LKK-KJN, 2013 U.S. Dist. LEXIS 179955, at *8 (E.D. Cal. Dec. 23, 2013) (noting that the "court has little difficulty in concluding that contemplated civil litigation in Canada qualifies as a proceeding in a foreign tribunal . . . . "); *In re Application of Strand Invs. Ltd.*, No. 09- 21985-CIV-MORENO, 2009 U.S. Dist. LEXIS 76445, at *3 (S.D. Fl. July 24, 2009) (presuming that court proceedings in the Bahamas satisfied Section 1782's "foreign tribunal" requirement).

Moreover, the Supreme Court has held that for Section 1782 purposes "the foreign proceeding need not be pending, so long as it is 'within reasonable contemplation.'" *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015) (quoting *Intel*, 542 U.S. at 259). The Second Circuit has found that a foreign proceeding is "within reasonable contemplation" where the proceeding is not "merely speculative" and the Section 1782 applicant "provide[s] some objective indicium that the action is being contemplated." *Certain Funds, Accounts and/or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C.*, 798 F.3d at 123 ("At a minimum, a [Section] 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.").

Here, there is ample indication that the Anticipated Proceeding is being "reasonably contemplated" by Piraeus and that it is not "merely speculative." Piraeus has retained counsel in London, New York, Athens, and Bermuda for purposes of pursuing the Anticipated Proceeding. Manolatou Decl. at 3. Piraeus has also, at its own cost and expense, reinstated Newlead to the Bermudan Companies Register for purposes of restoring the company's capacity to be sued under the Bermuda Companies Act 1981. *Id.* ¶ 15. Moreover, Piraeus already has commenced an action before the English Court against Newlead's principal and founder, Mr. Zolotas, and certain of his entities related to loan and guarantee obligations nearly identical to those as issue here. *Id.*, Ex. 7.

Courts in this Circuit have granted Section 1782 applications in like circumstances. *In re Hornbeam Corp*., 722 F. Appx. at 9-10 (foreign proceeding was reasonably contemplated where the petitioner "represented that it intended to initiate further litigation once it obtained additional information" and "articulated a theory on which it intended to litigate"); *In re Hansainvest Hanseatische Investment-GmbH*, No. 18-mc-310 (RJS), 2018 WL 7500304, at *3 (S.D.N.Y. Dec. 17, 2018) (granting application where application "demonstrated the concrete basis required to show that the German litigation is 'more than just a twinkle in counsel's eye,' and that therefore *Intel's* 'reasonable contemplation' standard has been satisfied."); *see also Mees*, 793 F.3d at 298 ("discovery sought pursuant to [Section 1782] need not be necessary for a party to prevail in the foreign proceeding" but rather must merely be "something that will be employed with some advantage or serve some use in the proceeding.")

*Third*, Piraeus will be the plaintiff in the Anticipated Proceedings, which makes it an "interested person" for Section 1782's purposes. *See Intel*, 542 U.S. at 256 (explaining that there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [Section 1782]"); *Lancaster Factoring Co. v. Mangone*, 90

F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign ... litigation.'"); Hewetson Decl. ¶ 4.

Accordingly, the Application meets all three of Section 1782's statutory requirements. As the following Section II shows, the Application also satisfies the four discretionary *Intel* factors.

## II. THE APPLICATION SATISFIES THE FOUR DISCRETIONARY INTEL FACTORS

After determining that a party satisfies Section 1782's three statutory requirements, courts must consider the four discretionary factors enunciated by the Supreme Court in *Intel Corp*. *See Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery v. Bullock*, 652 Fed. Appx. 7, 8 (2d Cir. 2016) (explaining that courts should examine the discretionary Intel factors after determining that Section 1782's three statutory requirements have been met); *Certain Funds, Accounts, and And/Or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C.*, 798 F.3d at 117 (relating same).

In exercising its discretion under Section 1782, a district court should consider the "twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees*, 793 F.3d at 297-98 (2d Cir. 2015); *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. Appx. 95, 96 (2d Cir. 2009) (explaining same).

The four discretionary factors the Supreme Court announced in *Intel* are:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for [Section] 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the [Section] 1782(a) request conceals an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*In re Accent Delight Int'l Ltd.*, 696 Fed. Appx. at 539-40 (quoting *Mees v. Buiter*, 793 F.3d at 298 (citing *Intel Corp*., 542 U.S. at 264-65)).

In this case, all four *Intel* factors favor granting the Application, and the Court should exercise its broad discretion to do so.

### A. The Respondents Will Not Be Parties to the Anticipated Proceedings

The first *Intel* factor clearly favors granting the Application because the Respondents will not be parties to the Anticipated Proceedings. As the Supreme Court explained in *Intel*:

> When the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel Corp*., 542 U.S. at 264.

In this case, the Respondents will not be parties to the Anticipated Proceedings and it is unlikely that the English Court in those proceedings could exercise jurisdiction over the Respondents to obtain the discovery that the Subpoenas request in any event. Hewetson Decl. ¶ 8. The events that will be at issue in the Anticipated Proceedings took place primarily in New York. For instance, the OTC issued its "caveat emptor" warning and de-listing decision regarding Newlead out of its New York offices. Manolatou Decl., Ex.4. Accordingly, because the relevant documents the Respondents maintain are likely located in this District, the English Court in the Anticipated Proceedings will not have jurisdiction to compel the production of such documents. Hewetson Decl. ¶ 10.

Consequently, the first *Intel* factor favors granting the Application.

### B. The Nature and Receptivity of the Foreign Tribunal to the Discovery Sought

The second *Intel* factor examines the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to the requested discovery. This factor favors granting the Application as well.

In this case, the courts in the Anticipated Proceedings will be the English Court, a common law court which generally permits discovery. Hewetson Decl. ¶ 10. There is nothing that suggests the English Court would refuse to accept relevant and material evidence that would aid the proceedings it will be adjudicating. *Id.* ¶ 13. Indeed, courts in this District routinely grant applications for Section 1782 discovery in connection with proceedings in England. *See, e.g., In re Catalyst Managerial Servs., DMCC*, 680 F. Appx. 37, 38 , 41 (2d Cir. 2017); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 364, 379 (S.D.N.Y. 2019); *La Suisse*, 62 F. Supp. at 361-62.

Consequently, there is every reason to believe that the English Court in the Anticipated Proceedings will be receptive to the evidence that the Subpoenas seek. The second *Intel* factor therefore favors the Application as well.

### C. The Application Does Not Seek to Circumvent Proof-Gathering Restrictions in the English Court

The third *Intel* factor weighs in favor of the Application as well, because the Subpoenas do not seek to circumvent any proof-gathering restrictions in the Enforcement Courts.

*First*, there is nothing to indicate that the English Court prohibits the collection and introduction of relevant documentary evidence in civil proceedings. *See* Hewetson Decl. ¶ 13; *La Suisse*, 62 F. Supp. at 362 ("There is no reason to believe that the effort to obtain discovery here will circumvent any policies of the U.K. regarding discovery").

*Second*, Section 1782 does not impose any foreign discoverability requirement in any event, and Section 1782 applications can be granted even when the evidence sought could not be obtained under the procedures of the foreign court to which the evidence will be introduced. *See Gorsoan Ltd.*, 652 Fed. Appx. at 9 (relating that "[t]here is no 'requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding'" (quoting *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997)). Accordingly, even if there was some rule in the English Court against the collection of relevant evidence – and there is nothing to indicate that there is – that rule would not weigh against granting this Application. *See id.*; *Brandi-Dohrn*, 673 F.3d at 82 ("Accordingly, as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application").

Accordingly, the third discretionary *Intel* factor favors the Application as well.

**D. The Subpoenas Are Not Unduly Intrusive or Burdensome**

Lastly, the Fourth *Intel* factor also favors granting the Application because the Subpoenas are narrowly tailored to obtain documents from the Respondents that are sufficient to identify Events of Default under the loan documents as well as the additional breaches of the Guarantee Piraeus suspects have transpired. Hewetson Decl. ¶ 9. The Subpoenas therefore seek evidence that is directly relevant to Piraeus' litigation efforts and endeavor to obtain that evidence in a minimally intrusive fashion. *See In re Application of Republic of Ecuador*, No. 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360, at *8 (E.D. Cal. Sept. 13, 2011) (stating that "given the relevance of the information, it is arguably less likely that issuance of the subpoena will result in undue intrusion or burden . . . .").

Consequently, all four discretionary *Intel* factors favor granting the Application, and Piraeus should be permitted to serve the Subpoenas on the Respondents.

## III. THE APPLICATION WAS PROPERLY BROUGHT *EX PARTE*

Lastly, the Application was properly brought on an *ex parte* basis, because "'it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.'" *In re Hornbeam Corp*., 722 F. Appx. at 11(quoting *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)); *see O'Keefe v. Adelson (In re O'Keeffe)*, 650 Fed. Appx. 83, 85 (2d Cir. 2016) (allowing *ex parte* Section 1782 application on grounds that such applications are commonplace and proper).

Courts grant Section 1782 applications *ex parte* because the respondent "can later challenge any discovery request by moving to quash." *Gushlak*, 486 F. Appx. at 217; *see In re Application of Republic of Ecuador*, 2011 U.S. Dist. LEXIS 103360, at *4-5 (relating that "*ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it").

Accordingly, courts routinely grant Section 1782 applications *ex parte*, and this Court should do the same.

## CONCLUSION

For the reasons set forth above, the Application should be granted and Piraeus should be permitted to serve the Subpoenas attached as Exhibits A and B to the Application.

Dated: September 23, 2020

*/s/ Samuel Kadosh*
Samuel Kadosh
Blake Simon
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel.: (212) 521-5400
Fax: (212) 521-5450
*Attorneys for Applicant, Piraeus Bank*